Filed 5/6/22  Jamison v. McNeal CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| KURITA JAMISON, <br><br> Plaintiff, Cross-defendant, and Respondent, <br><br> v. <br><br> LINTON McNEAL, Jr., <br><br> Defendant, Cross-complainant, and Appellant. | A161846 <br><br> (Solano County <br> Super. Ct. No. FCS049179) |

Plaintiff Kurita Jamison (Jamison) and defendant Linton McNeal Jr. (McNeal) are joint tenants of property that is the subject of this partition action (Code Civ. Proc., tit. 10.5, § 872.010 et. seq. [1]). Following a four-day bench trial, the court entered an interlocutory judgment in which it ordered the property to be partitioned and declared each party an owner of an undivided one-half interest in the

_____

[1]    All undesignated statutory sections refer to the Code of Civil Procedure.

1

property.  McNeal appeals the interlocutory judgment on various grounds.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Background

On November 30, 2005, Jamison and McNeal purchased a single-family home on a parcel of land, which is the subject of this partition action.  They took title as joint tenants, with each owning an undivided one-half interest in the property.  At the time of the purchase the parties, who were never married, had been living together since 1992 and had two minor children.  According to Jamison, the parties had purchased the house to own their home and for the children's future inheritance.

The parties and their children lived together in the house until May 2011, when Jamison (and only Jamison) stopped living there.  At the time of the 2017 partition action, McNeal lived in the house with one of the parties' children, by that time an adult.

The parties disputed their arrangement regarding mortgage payments.  They did agree that, after the first two years, McNeal was to make the monthly payment on the first mortgage (together with taxes and insurance) from his checking account, and Jamison would make the monthly payment on the second mortgage from her separate checking account.  Jamison paid the utility bills from her separate checking account.  Jamison made all her payments from 2005 until she left the property in mid-2011; house expenses incurred after she left were paid by McNeal.

Approximately one year after Jamison's departure from the property, on April 9, 2012, McNeal recorded a forged quitclaim deed, by

which Jamison purportedly transferred her entire interest in the property to McNeal.  In 2014, McNeal secured a modification of the mortgages (hereafter "loan modification agreement") after representing to the bank that Jamison was a co-owner of the property and arranging for the forgery of Jamison's signature on the loan application.[2]  Jamison contacted the Real Estate Fraud unit of the Solano County District Attorney on two occasions, the first time after she learned she had been removed from the property title by the forged quitclaim deed, and the second time after she learned that the loan modification agreement had been secured based on an application that contained her forged signature.

On March 26, 2015, the Solano County District Attorney filed an amended felony complaint charging McNeal with several offenses including forgery of the quitclaim deed (Pen. Code, § 470, subd. (c)) (count 2) and forgery related to the loan modification agreement (*id.*, subd. (d)) (count 5).  Following a preliminary hearing, the magistrate held McNeal to answer for counts two and five, as well as other offenses

---

[2]     Under the loan modification agreement, which modified the first lien mortgage (deed of trust November 17, 2005), Jamison was financially responsible for "a final balloon payment in the amount of $145,153.53," payable at the end of the 30-year term in 2035.  Defense expert witness Ari Bulmash testified that despite the balloon payment, both parties financially benefited by the modification, which reduced the principal balance and over the term of the loan resulted in a significant interest saving.  However, he conceded Jamison's forged signature on the loan application made her financially liable for the loan payments for which she could be civilly sued if the payments were not made.  During the trial, the court was informed that the mortgage bank had not taken any action against McNeal based on the loan modification agreement and Jamison was bringing this action for partition and sale to extinguish the outstanding mortgage loan.

3

relating to the forgeries. On April 8, 2016, McNeal agreed to and pleaded no contest to the felony offense of forging the loan modification agreement, and the remaining charges in the information were dismissed with a *Harvey* waiver (*People v. Harvey* (1979) 25 Cal.3d 754). As part of the plea agreement, McNeal acknowledged he had arranged for Jamison's forged signature on the quitclaim deed, and he agreed to the issuance of a court order declaring the forged deed void and cancelled as of the date of its execution; the court order was recorded on March 7, 2017.

## B. Partition Action

On July 11, 2017, Jamison filed this statutory action seeking partition of the property by sale and a division of the sale proceeds between the parties. (§ 872.710, subd. (b).)

McNeal filed an answer and a cross-complaint, later amended, challenging the request for partition and seeking title by adverse possession and to quiet title, as well as monetary damages for breach for contract. McNeal alleged, in pertinent part, that Jamison was not entitled to partition as the property was the home of McNeal and their children who would be adversely affected by any partition; in addition, Jamison had no interest in the property due to her abandonment of the property and failure to contribute her proportionate share towards the mortgage, maintenance, improvements, and repairs. McNeal also alleged he was entitled to sole ownership of the property under a claim of adverse possession as he had been in actual, continuous, open, notorious, and hostile possession since Jamison had been "put . . . out" of the property, and he had made permanent and valuable improvements valued at approximately $180,000. As to his claim for

4

breach of contract, McNeal alleged Jamison had breached the parties' verbal agreement requiring her to make monthly mortgage payments and other payments that had been paid for by McNeal since Jamison had abandoned the property. Before trial each party filed a brief asking the court to deny all the relief requested by the other party under the doctrine of unclean hands.

A bench trial was held over the course of four days. The court heard testimony from Jamison and McNeal, plaintiff's witnesses Laura Pagey (former Solano County Assistant District Attorney) and Stephen R. Camden (expert qualified to testify as to residential rental values in City of Vallejo), and defense witness Ari Bulmash (expert qualified to testify as to real estate, loans, and loan modifications). The court also considered documentary exhibits submitted by both parties including judicially noticed documents from the criminal prosecution against McNeal. At the conclusion of the evidentiary phase, the court heard closing arguments and the matter was submitted.

The court ruled from the bench, finding in favor of Jamison on her request for partition, and finding against McNeal on his cross-complaint. The court explained that, pursuant to well settled law governing partition actions, Jamison, as "[a]n owner of a concurrent interest in real property," was "entitled to partition as a matter of absolute right with no need to give any reasons unless the right has been waived," and her "title in fee" could not be divested by "abandonment." The court denied McNeal's request for any and all damages, including expenditures for repairs made to the house, on the "separate basis," that "his testimony both about his time and the value

of his repair work is not credible, is self-serving, and is minimally supported by documentary evidence."

The court issued the following interlocutory judgment:

"1.     Jamison and McNeal purchased the property . . . on November 30, 2005.  They took title as joint tenants with each having an undivided one-half interest in the property.  The parties were never married to each other.

"2.     Jamison left the residence in 2010 [sic].  McNeal recorded a quitclaim deed on April 9, 2012, quitclaiming Jamison's entire interest in the property.  Jamison discovered that she had been removed from the title to the property and contacted the Solano County District Attorney's [O]ffice.

"3.     On March 4, 2014, the District Attorney filed a felony complaint against McNeal.

"4.     On October 26, 2015, the District Attorney filed an amended felony complaint against McNeal.

"5.     On April 6, 2016, McNeal pled no contest to Count 5 of the amended felony complaint, felony forgery, under Penal Code Section 470 subsection (d) [based on the forgery related to the loan modification agreement] . . . for the property.

"6.     The Court ordered that the quitclaim deed that McNeal recorded on April 9, 2012, was void and cancelled as of the date of its execution.

"7.     Accordingly, the Court finds in favor of Jamison and grants her request for partition of the Subject Property.

"8.     As to McNeal's Cross-complaint, the Court finds inequitable conduct on the part of McNeal by forging Jamison's name on a quitclaim deed and recording that deed on April 9, 2012.  It is not only unconscionable and inequitable, but it is felonious.  McNeal's conduct in forging Jamison's name on the quitclaim deed was an ouster, which is wrongful conduct and related directly to the issue in controversy.  Accordingly, McNeal's . . . claim of breach of contract is

6

denied under the doctrine of unclean hands. McNeal's claim of adverse possession is denied under the doctrine of unclean hands.

"9. On separate grounds, McNeal's claim for adverse possession is denied for failure to state all of the requisite elements. The Court finds that in September 2014, McNeal represented to [the mortgage bank] that he was the joint owner of the property with Jamison for the purpose of securing a lower mortgage interest rate, which benefited both parties according to the defense witness, attorney Ari Bulmash. Accordingly, McNeal acted in a manner that was not (1) hostile to Jamison's interest; or (2) under a claim of exclusive title. According, McNeal's action for adverse possession fails, and the Court finds in favor of Jamison.

"10. McNeal's claim to quiet title is denied under the doctrine of unclean hands and because he presented no evidence to support his claim.

"11. The doctrine of unclean hands extinguishes McNeal's claim for any and all damages, including expenditures both capital and labor related for any repairs made to the property. The doctrine of unclean hands extinguishes McNeal's claim for any payment of principal and interest on the mortgage of any lien, payment of insurance for the common benefit, and protection and preservation of title, as well as any claims for any repairs or improvements that were made to the property. McNeal shall take nothing for his mortgage payments, his property tax payments, and any and all repairs under the doctrine of unclean hands."

The interlocutory judgment ordered the partition of the property and declared Jamison and McNeal owners of an undivided one-half interest in the property, subject to a deed of trust dated November 17, 2005, and recorded November 30, 2005. The court set a hearing for February 2, 2021 to hear additional evidence to determine the manner of partition, for the appointment of a referee, to establish the balance of the first mortgage, and for further proceedings.

McNeal's timely appealed ensued.  (§ 904.1, subd. (9) [appeal may be taken from an interlocutory judgment in an action for partition determining the rights and interests of the respective parties and directing partition to be made].)

## DISCUSSION

We must begin by noting that our review is significantly impaired by McNeal's submission of an opening brief that fails to comply with our California Rules of Court [3], which inform parties as to the proper format in which they are to present their arguments to this court.

Specifically, the opening brief contains many factual assertions unsupported by any record citations, "in dramatic noncompliance with appellate procedures." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1245–1246.)  Additionally, while the opening brief includes point headings, within some of the point headings McNeal discusses issues that are not related to that point heading, makes factual assertions without any record citations, and fails to offer any legal authority or cogent analysis as to how or why the court erred in its determinations or how he was prejudiced by those determinations.

McNeal's contention that Jamison's responsive brief suffers from similar record citation deficiencies and fails to address all his appellate arguments does not inure to his benefit.  As the appellant, it is McNeal who has the burden of showing prejudicial error.  (See *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.)  He cannot demonstrate reversible error by arguing that Jamison has not addressed, or adequately addressed, contentions for which he himself does not

---

[3]     All undesignated rules references are to the California Rules of Court.

8

present cogent arguments supported by record citations and relevant legal authority.

Hence, as delineated below, when McNeal makes a legal argument under a point heading, but fails to support it with record citations and/or cogent arguments and citations to authority, we will treat the point as forfeited. (See, e.g., *Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 ["[w]hen an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited"]; *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1267 ["plaintiffs make numerous factual assertions in their briefs without record citation" but "[w]e are entitled to disregard such unsupported factual assertions"]; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [" '[i]t is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations;' " "[i]f a party fails to support an argument with the necessary citations to the record, that . . . argument [may be] deemed to have been waived"]; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699 [appellate court ignores contention supported only by citations to general law but no argument applying the law to the circumstances of the case].)

We find unavailing McNeal's attempt to use his reply brief to supplemental his opening brief arguments. This he cannot do as "[f]airness militates against our consideration of any arguments that [he] has chosen not to raise until [his] reply brief, and the authorities holding to that effect are numerous." (*Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1372, fn. 11; see also *Paulus v. Bob Lynch*

9

*Ford, Inc.* (2006) 139 Cal.App.4th 659, 685 [appellant's "belated attempt to address [issues] . . . in his reply brief – after the respondents' brief noted his failure to address the [issues] – did not salvage those abandoned issues"].)

With these principles in mind, we now address McNeal's arguments.

## I. Grant of Partition

Under various point headings, McNeal challenges the trial court's ruling that Jamison was entitled to partition under section 872.710, subdivision (b), which allows that "partition as to concurrent interests in the property shall be as of right unless barred by a valid waiver." He contends Jamison was not entitled to partition because the parties do not hold "concurrent interests" in the property. The basis for this argument is that Jamison's joint tenancy interest was voluntarily severed when she abandoned the property and failed to honor her financial obligations and, therefore she has no equitable interest in the property. We see no merit to this argument.

In granting partition, the trial court found Jamison, who held title to the property as a joint tenant, was an owner of a concurrent interest in the property. As such, she was entitled to partition as a matter of absolute right with no need to give any reasons unless the right was waived, and her title in fee could not be divested by abandonment.

The trial court's ruling is supported by well settled law: "[A] cotenant is entitled to partition as a matter of absolute right; that he need not assign any reason for his demand; that it is sufficient if he demands a severance; and that when grounds for a sale are duly

established it may be demanded as of right.  To grant it is not a mere matter of grace.  The only indispensable requirement to [partition] . . . is that a clear title be shown, and in no event is a partition to be denied because it will result in financial loss to the cotenants." (*De Roulet v. Mitchel* (1945) 70 Cal.App.2d 120, 124, and the cases cited therein; see *Lazzarevich v. Lazzarevich* (1952) 39 Cal.2d 48, 50 (*Lazzarevich*) ["in the absence of waiver a joint tenant is entitled as a matter of right to have his interest severed from that of his cotenant"].)

We see no merit to McNeal's assertion that he and Jamison were not concurrent, but rather "successive," owners of the property, which required the trial court to consider the parties' " 'best interests' " (§ 872.710 (c)), as well as the independent and broader " 'requirement of fairness.' " [4]

McNeal's claim that Jamison did not have a "concurrent" interest in the property is based on his contention that Jamison abandoned her interest in the property and failed to timely pay certain expenses.  However, it is well settled that a cotenant, holding title in fee, is not barred from pursuing partition by either abandonment (see *Ferris v. Coover* (1858) 10 Cal. 589, 631; *Hunter v. Shultz* (1966) 240 Cal.App.2d 24, 28) or the failure to pay a proportionate share of property expenses (*Lazzarevich*, *supra,* 39 Cal.2d at pp. 50-51).  None of the cases cited by McNeal support his claim that Jamison lost her status as a "concurrent" owner based on her abandonment and failure to pay her proportionate share of property expenses.

---

[4]	In support of this argument, McNeal asks us to consider an unpublished decision, which "must not be cited or relied on by a court or a party" (Cal. Rules of Court, rule 8.1115(a)), and in any event, does not support his claim of error.

11

We also see no merit to McNeal's reliance on section 872.710, subdivision (c), which reads: "Partition *as to successive estates in the property* shall be allowed if it is in the best interest of all the parties. The court shall consider whether the possessory interest has become unduly burdensome by reason of taxes or other charges, expense of ordinary or extraordinary repairs, character of the property and change in the character of the property since creation of the estates, circumstances under which the estates were created and change in the character of the property since creation of the estates, and all other factors that would be considered by a court of equity having in mind the intent of the creator of the successive estates and the interests and needs of the successive owners." (*Ibid.*, italics added.) Because the trial court properly found the parties' interests in this case were *concurrent*, it properly ruled Jamison was entitled to partition as a matter of right absent a valid waiver.

McNeal's " 'requirement of fairness' " appears to be based on *American Medical International, Inc. v. Feller* (1976) 59 Cal.App.3d 1008 (*AMI*), in which the court stated: "In addition to the limitation on the right of partition derived from express or implied waiver by agreement, there is an even wider and more general limitation. This limitation subjects the right of partition to the 'requirement of fairness' " (*id.* at p. 1015). However, the *AMI* decision is not pertinent as the case does not address section 872.710, which was enacted the same year that *AMI* was decided. (See *McDowell & Craig v. Santa Fe Springs* (1960) 54 Cal.2d 33, 38 ["language used in any opinion is to be understood in light of the facts and the issue then before the court;" "cases are not authority for propositions not considered"].)

To the extent McNeal appears to challenge the trial court's implied factual finding that Jamison had not waived her right to partition, we cannot determine whether there is any merit to the contention as McNeal has not tendered the issue "together with a fair summary of the evidence bearing on the challenged finding, particularly including evidence that arguably *supports* it." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409–410.) "[W]hen an appellant urges the insufficiency of the evidence to support the findings it is his duty to set forth a fair and adequate statement of the evidence which is claimed to be insufficient. He cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of the record when appellant has shirked his responsibility in this respect." (*Hickson v. Thielman* (1956) 147 Cal.App.2d 11, 14–15.)

The cases cited by McNeal do not support an argument that the trial court was required to find, as a matter of law, waiver of the right to partition based on evidence of Jamison's abandonment and failure to pay her proportionate share of property expenses. Whether Jamison waived her right to partition was a question particularly for the trial court as the trier of fact who heard the testimony and considered the documentary evidence. The trial court could "accept part of the testimony of a witness and reject another part even though the latter contradicts the part accepted. [Citations.] As was said in *Nevarov v. Caldwell* (1958) 161 Cal.App.2d 762, 777, '[the trier of fact] properly may reject part of the testimony of a witness, though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses thus weaving a

cloth of truth out of selected available material. [Citations.]" (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67–68.) "[N]either conflicts in the evidence nor ' "testimony which is subject to justifiable suspicion . . . justif[ies] the reversal of a judgment, for it is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth and falsity of the facts upon which a determination depends." ' [Citations.]" (*Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1065.) These rules "will obtain even though to some triers of fact the evidence . . . would have seemed so improbable, impossible and unbelievable that a judgment contrary to that now on appeal would have inevitably followed." (*Romero v. Eustace* (1950) 101 Cal.App.2d 253, 254.)

## II. Dismissal of McNeal's Cross-Complaint

### a. Adverse Possession Claim

In seeking to quiet title based on adverse possession McNeal had the burden to prove every element of the claim: "(1) Possession must be by actual occupation under such circumstances as to constitute reasonable notice to the owner. (2) It must be hostile to the owner's title. (3) The holder must claim the property as his own, under either color of title or claim of right. (4) Possession must be continuous and uninterrupted for five years. (5) The holder must pay all the taxes levied and assessed upon the property during the period." (*Dimmick v. Dimmick* (1962) 58 Cal.2d 417, 421.) Here, the trial court found McNeal's 2014 representation to the mortgage bank that he held the property in joint ownership with Jamison was evidence that his claim of ownership was not exclusive or hostile to Jamison's title.

In challenging the trial court's ruling, McNeal makes no mention of his 2014 representation to the mortgage bank that he held the

14

property in joint ownership with Jamison. And, more significantly for purposes of our review, he makes no argument that such evidence is insufficient to defeat his claim of title by adverse possession. Consequently, his claim of error is forfeited.

### b.     Application of Unclean Hands Doctrine

" 'The [unclean hands] doctrine demands that a [party] act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim.' [Citation.] The doctrine of unclean hands requires unconscionable, bad faith, or inequitable conduct by the [party] in connection with the matter in controversy. [Citations.] Unclean hands applies when it would be inequitable to provide [the party] any relief, and provides a complete defense to both legal and equitable causes of action." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 56.) "Whether the unclean hands doctrine applies turns on the particular facts of the specific case. The doctrine must be pleaded or called to the attention of the trial court in order that it may pass on the defense and also to permit the person against whom it is sought to be applied the opportunity to present such evidence as might bear on that issue." (*Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 726–727.)

In his opening brief McNeal presents no cogent recitation of the evidence with citations to the record or legal analysis challenging the court's application of the unclean hands doctrine. For the first time in his reply brief, McNeal argues the doctrine of unclean hands was misapplied in this case. He contends in a conclusory fashion, with no

15

citation to the record or relevant legal authority, that the court should have applied the doctrine of unclean hands to Jamison's request for partition based on her "numerous breaches and subsequent abandonment" of the property that precipitated the actions leading to this litigation. He also asserts that Jamison's "unclean hands" were "the catalyst" for all the litigation including the criminal case against him. Because McNeal has not properly briefed the issue, lacking both citation to the record and relevant legal authority in support of his contention, his claim of error is forfeited.

### c. McNeal's Request for Credit for Expenses Incurred for Property Repairs and Maintenance

In challenging the trial court's ruling rejecting his request for credit for expenses incurred for property repairs and maintenance, McNeal asks us to consider case law governing void judgments due to fraud, and contends, without any record citation, that "[i]n this matter Jamison testified to untruths or matters that she fabricated to benefit partitioning"; "Jamison has no equitable interest and is not entitled to partitioning"; and "McNeal prepared over 100 pages of receipts and evidence the Trial Court refused to allow it." Because McNeal has not properly briefed the issue, lacking citation to the record and relevant legal authority specifically directed at the court's ruling regarding his request for credit for expenses incurred for property repairs and maintenance, this claim of error is forfeited.

## III. Evidentiary Rulings

McNeal also argues the interlocutory judgment should be reversed because the trial court erroneously denied his request to present relevant witnesses and evidence and allowed irrelevant

16

evidence of the criminal prosecution against him. However, his briefing does not allow for review. Again, he does not set forth in a cogent manner a description of each document sought to be admitted, counsel's arguments and the court's ruling, why the ruling was in error, and how he was prejudiced by the ruling. Similarly, his challenge to the trial court's refusal to allow certain defense witnesses to testify does not set forth a clear description of the proposed testimony, counsel's arguments and the court's ruling, why the ruling was in error, and how he was prejudiced by the ruling. Simply saying that the court erred in excluding certain evidence, followed by a recitation of record citations, does not demonstrate that the documents and proffered testimony were relevant evidence that should have been admitted by the court. Moreover, McNeal cites no legal authority in support of his contention that his proffered evidence should have been admitted as relevant and the evidence of the criminal prosecution against him should have been excluded as irrelevant.

The lack of adequate briefing on this issue is not a mere technical issue, but squarely impacts our ability to review the matter. The trial court has " 'broad discretion' under Evidence Code section 352 to 'exclude even relevant evidence "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice [or] of confusing the issues . . . ." ' " (*People v. Merriman* (2014) 60 Cal.4th 1, 60 (*Merriman*).) "[T]he balancing process mandated by [Evidence Code] section 352 requires 'consideration of the relationship between the evidence and the relevant inferences to be drawn from it, whether the evidence is relevant to the main or only a collateral issue, and the necessity of the

17

evidence to the proponent's case as well as the reasons recited in section 352 for exclusion.' " (*People v. Wright* (1985) 39 Cal.3d 576, 585.)

As an appellate court, we cannot reverse based on a trial court's evidentiary rulings "unless it is shown ' "the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. " ' " (*Merriman, supra*, 60 Cal.4th at p. 74; see Cal. Const., art. VI, § 13 ["[n]o judgment shall be set aside . . ., in any cause, on the ground . . . of the improper admission or rejection of evidence, . . ., unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; *People v. Abilez* (2007) 41 Cal.4th 472, 503 [discretionary evidentiary ruling did not violate defendant's right to present a defense]; *People v. Cunningham* (2001) 25 Cal.4th 926, 999 [defendant not deprived of due process by exclusion of defense evidence on a minor or subsidiary point]; *People v. Ayala* (2000) 23 Cal.4th 225, 301 [Evid. Code, § 352 "empowers courts to prevent . . . trials from degenerating into nitpicking wars of attrition over collateral credibility issues;" " 'the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance' "].)

Accordingly, McNeal's challenge to the trial court's evidentiary rulings is forfeited for lack of adequate briefing. Because it is not our function to act as appellate counsel, we decline to independently review the record (hundreds of pages) to determine if the evidentiary rulings were in error or to speculate how McNeal may have been prejudiced by

18

the rulings.  (See *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 [we are "not required to examine undeveloped claims, nor to make arguments for parties"].)

## IV.    Denial of Statement of Decision

McNeal also argues for reversal of the interlocutory judgment based on the trial court's refusal to provide a statement of decision. However, in his opening brief McNeal makes a merely conclusory argument, without any record citation, that he requested a statement of decision and the court denied the request.  In his reply brief, McNeal cites to the appropriate portion of the record, and again argues his counsel made a request for a written statement of decision and the request was denied.  He then contends that a statement of decision was necessary as Jamison had no interest in the property to support partition (an argument which we have already found to be without merit) and the statement of decision would have "provided specifically" as to how the property was to be partitioned and "what was the lawful basis" for partition.  We see no merit to this claim of error.

Section 632 provides that a request for a statement of decision must be made within 10 days after announcement of a tentative decision and "*shall* specify those [principal] controverted issues" to be addressed by the court.  (*Ibid.*, italics added.)  Rule 3.1590(d) similarly provides that, within 10 days after announcement of the tentative decision, a party may request a statement of decision to address the principal controverted issues; the principal controverted issues "*must* be specified in the request." (*Ibid.*; italics added.)  Here, the record shows McNeal's request for a statement of decision did not specify any controverted issues to be addressed in a statement of decision.  Having

19

failed to so specify, McNeal has waived his right to object to the failure of the court to issue a statement of decision. (See *City of Coachella v. Riverside County Airport Land Use Com.* (1989) 210 Cal.App.3d 1277, 1292–1293 (*City of Coachella*) ["a general, nonspecific request for a statement of decision does not operate to compel a statement of decision as to all material, controverted issues"]; *Atari, Inc. v. State Bd. of Equalization* (1985) 170 Cal.App.3d 665, 674–675 ["[s]ection 632 requires a party requesting a statement of decision to specify those controverted issues as to which it is requesting a finding;" "[f]ailure to request findings on specific issues results in a waiver as to those issues"].)

Moreover, McNeal has failed to demonstrate prejudice by the lack of a written statement of decision. The trial court's ruling following trial and its written findings in its interlocutory judgment state the "lawful basis" for granting Jamison's request for partition, and the manner of partition was appropriately left to be resolved in further proceedings. We therefore conclude the court's denial of McNeal's request for a statement of decision does "not constitute error requiring redress by this court." (*City of Coachella*, *supra*, 210 Cal.App.3d at p. 1293.)

## V.  Trial Court's Conduct

While McNeal has a subpoint heading entitled, "Judicial Bias is Evident in the Record," he makes no assertion that he made any objections based on judicial bias in the trial court. Because McNeal did not object in the trial court, he has forfeited any right to raise this issue on appeal. (See *People v. Seaton* (2001) 26 Cal.4th 598, 698 [claim of judicial bias not preserved for appellate review as appellant "failed to

20

object to the allegedly improper acts and never asked the judge to recuse himself"]; accord, *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1218.)

Even if the issue were preserved, we see no merit to the claim of judicial bias. McNeal contends the trial court showed judicial bias because it allowed "Jamison to include evidence and repeatedly refer to the criminal action against him despite numerous objections;" "accused" defense counsel of interrupting when the trial court posed a question; erroneously determined the financial care of two children was " 'irrelevant' " to maintaining or modifying a mortgage; allowed Jamison to present derogatory and irrelevant criminal information; although the trial court granted his "motion to remove a derogatory term," Jamison referred to McNeal "mentioning a derogatory term several times regardless;" and allowed Jamison to present witnesses concerning the criminal case against McNeal, but refused to allow McNeal to present rebuttal witnesses.

The complained-of conduct does not show judicial bias. "When an attorney engages in improper behavior, such as ignoring the court's instructions or asking inappropriate questions, it is within a trial court's discretion to reprimand the attorney, even harshly, as the circumstances require. [Citation.] . . . Moreover, a trial court's numerous rulings against a party – even when erroneous – do not establish a charge of judicial bias, especially when they are subject to review." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1111–1112.)

To the extent McNeal contends the above-described actions of the trial court, whether considered singly or in combination, constituted judicial error, misconduct, or bias warranting reversal, he has failed to

21

provide supporting legal authority or any cogent analysis showing that the court's conduct or rulings were erroneous or require reversal of the interlocutory judgment.[5]

## DISPOSITION

The interlocutory judgment is affirmed.  Plaintiff, cross-defendant and respondent Kurita Jamison is awarded costs on appeal.

---

[5]     We conclude by noting we have made a concerted effort to address McNeal's arguments in his briefs.  Any argument not specifically mentioned is omitted due to McNeal's failure to properly brief the issue.

22

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Rodríguez, J.

*A161846/Jamison v. McNeal*